IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

| | |
|---|---|
| AUGUSTA COUNTY, VIRGINIA,<br>a political subdivision of the<br>Commonwealth of Virginia,<br>18 Government Center Lane<br>P.O. Box 590<br>Verona, Virginia 24482-0590<br><br>    Plaintiff,<br><br>    v.<br><br>ALBERTO R. GONZALES,<br>Attorney General of the<br>United States of America,<br>BRADLEY J. SCHLOZMAN,<br>Acting Assistant Attorney General,<br>Civil Rights Division, United States<br>Department of Justice, Washington, DC,<br><br>    Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)    Civil Action No.<br>)<br>)<br>)<br>)<br>)    Three-Judge Court Requested<br>)<br>)<br>) |

## COMPLAINT

Augusta County alleges that:

1. This is an action brought for declaratory relief pursuant to Section 4 of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b (hereinafter "Section 4"). This Court has jurisdiction over this action pursuant to 28 U.S.C. §1343(a)(4), 28 U.S.C. §2201, 42 U.S.C. §1973b, and 42 U.S.C. §1973l(b).

2. Plaintiff Augusta County ("the County") is a political subdivision of the Commonwealth of Virginia. The County is located in the Shenandoah Valley, approximately 150 miles from Washington, DC. The County covers 967 square miles, more than half of the size of Rhode Island. It is the second largest county (in land area) in Virginia.

3. Located within Augusta County are the independent cities of Staunton and Waynesboro. Augusta County residents are ineligible to vote in the municipal elections of Staunton and Waynesboro, and residents of those two independent cities are ineligible to vote in County elections. Also located within Augusta County is the town of Craigsville, Virginia. Craigsville residents are eligible to vote in both town elections and in county elections.

4. In addition to the County itself, there are two elected governmental units operating completely within Augusta County. One of these is the town government in Craigsville. Craigsville is governed by a six-member town council. Elections for the town council are conducted at-large, and a plurality win system is in effect. Elections are held every two years and terms of office for town council members are staggered. The other governmental unit operating completely within Augusta County is the Augusta County School Board ("School Board"). Since 1995, the School Board has been an elected body, with members elected from the same districts as the County Board of Supervisors.

5. The Town of Grottoes straddles the border of both Augusta and Rockingham counties. The portion of Grottoes that lies within Rockingham County is approximately 1.3 square miles, and the portion of the town in Augusta County is less than 0.1 square miles. According to the 2000 census, the total population of Grottoes is 2,114, with only 4 persons living in that part of Grottoes that lies within Augusta County. Rockingham County has previously obtained a bailout from coverage under the special provisions of the Voting Rights Act, as amended, 42 U.S.C. §1973b.

6. The Augusta County Board of Supervisors is the governing body that formulates policies for the administration of government in Augusta County. It is comprised of seven members elected from single-member districts to serve four-year terms, which run concurrently.

2

The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer.

7. The seven Board of Supervisors districts presently contain a total of 25 polling locations (and one additional central absentee voting location) that are situated geographically in a manner that is convenient to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

8. According to the 2000 census, Augusta County, Virginia has a total population of 65,615. Of this number, 2360 persons (or 3.6%) are black and 620 (or 0.9%) are Hispanic. The voting age population of the County, according to the 2000 census, is 50,048. Of this number, 1966 (3.9%) are black and 407 (0.8%) are Hispanic. The Town of Craigsville, according to the 2000 census, has a total population of 979. Of this number, 17 (1.7%) are black and 4 (0.4%) are Hispanic.

9. Like other jurisdictions in the Commonwealth of Virginia, Augusta County does not collect or maintain voter registration data by race. As of July 2005, there are 38,627 registered voters in Augusta County.

10. The number of registered voters in the County has risen over the last couple of decades. In 1984, for example, there were only 22,899 registered voters in the County. By 1994, the number of registered voters had grown to 25,732. The number of registered voters in the County has grown even more dramatically over the last decade. From 1995 to 2005, the total number of registered voters in the County grew by 46%, from 26,468 to 38,627.

11. Voter turnout in elections within Augusta County varies according to the offices up for election. In the last three Presidential elections in 1996, 2000, and 2004, for example, 78.8%, 74.5% and 77.1% of the County's registered voters turned out to vote, respectively. In the

General Elections for Governor held in November 1997 and 2001, 54.9% and 51.5% of the County's registered voters turned out to vote, respectively. Voter turnout (the percentage of those registered voters who cast ballots) for the Augusta County Board of Supervisors and School Board elections in the last two election cycles (1999 and 2003) was 28.1% and 36.1%, respectively.

    12. As a political subdivision of the Commonwealth of Virginia, plaintiff Augusta County has been subject to certain special remedial provisions of the Voting Rights Act, including the provisions of Section 5 of the Act, 42 U.S.C. §1973c. Under Section 5 of the Act, known as the "preclearance" provisions, covered jurisdictions, including Augusta County, are required to seek and obtain preclearance from either this Court or from the United States Attorney General of any change affecting voting, and such preclearance must be obtained prior to implementation.

    13. Since its inception in 1965, the Voting Rights Act has allowed States, which are subject to these special provisions of the Act, to exempt themselves from coverage under the Act's special remedial provisions, if they can satisfy standards established in the Voting Rights Act.

    14. In 1982, Congress made changes in the exemption standards of the Act. As amended in 1982, Section 4 of the Voting Rights Act provides that States, as well as political subdivisions within those States that are covered under the special provisions of the Act, are entitled to a declaratory judgment in this Court granting an exemption from the Act's special remedial provisions if, during the ten years preceding the filing of the action:

> A) no test or device has been used either for the purpose or with the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group, within the State or political subdivision seeking a declaratory judgment;

> B) no final judgment has been entered by any court determining that the political subdivision has denied or abridged the right to vote on account of race, color, or membership in a language minority group;
> C) no Federal examiners have been assigned to the political subdivision;
> D) all governmental units within the political subdivision have complied with the preclearance provisions of Section 5 of the Voting Rights Act, 42 U.S.C. 1973c; and
> E) the Attorney General has not interposed any objection to any proposed voting change within the political subdivision and no declaratory judgment has been denied with regard to such a change by this Court under Section 5.

15. As amended in 1982, Section 4 of the Act also requires States and political subdivisions seeking an exemption from the Act's special provisions to show that, during the pendency of the declaratory judgment action seeking such exemption:

> A) Any voting procedure or method of election within the state or political subdivision exists which inhibits or dilutes equal access to the electoral process has been eliminated;
> B) Constructive efforts have been made by the political subdivision to eliminate any intimidation or harassment of persons exercising rights under the Voting Rights Act; and
> C) Expanded opportunities for convenient registration and voting exists within the State or political subdivision.

16. As described in each of the paragraphs set forth below, Augusta County has fully complied with the provisions of Section 4 of the Act as set forth in paragraphs 14 and 15, *supra*.

17. Over the years, Augusta County has made numerous submissions to the Department of Justice seeking preclearance of voting changes under Section 5 of the Voting Rights Act. Since 1983, for example, the County has made approximately 50 timely submissions of voting changes to the Department of Justice for Section 5 preclearance. The defendant Attorney General has approved each and every one of these voting changes. Since passage of the Voting Rights Act in 1965, not a single objection has been interposed by the Department of Justice to any voting change in Augusta County. In approving each and every change, the defendants have concluded that the voting changes submitted were free of a racially discriminatory purpose or a

5

racially discriminatory effect.  Many of the voting changes made over the years in Augusta County and submitted for Section 5 preclearance actually expanded the opportunities for County residents to become registered voters and to cast ballots.

18.  Voter registration opportunities in the County are readily and equally available to all citizens.  The voter registration office for the County is located at the county government center in Verona, a central and convenient location for County residents.  The voter registration office is office is open from 8 a.m. to 5 p.m., Monday through Friday.

19.  Voters in Augusta County may also register by mail, and voter registration applications are available at locations convenient to voters in the County, such as department of motor vehicles offices, military recruitment offices, public assistance agency offices, and the citizen information desk in the County Government Center lobby.  Information about voter registration (including a voter registration application that may be downloaded) is also available on the County's website, at http://www.co.augusta.va.us.

20.  The opportunity to become a registered voter in Augusta County is also available under the National Voter Registration Act (the "NVRA") at Department of Motor Vehicle ("DMV") offices and public assistance agencies in Augusta County.  While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of the great majority of registration applications.  Today, many of the County's new registrants register through the DMV and by mail.  As a result of implementation of the NVRA, the opportunities for persons to register to vote in Augusta County have been made more convenient and have been expanded.

21.  Augusta County also has a three-member Electoral Board, appointed pursuant to Virginia state law, and the Electoral Board nominates a roster of persons each February to work

6

as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. Not a single person recommended by a political party chair to serve as a poll official has ever been rejected by the Electoral Board.

22. Because the County has found it difficult over the years to find enough persons willing to serve as poll officials, the Augusta County General Registrar has actively recruited persons to work at the polls. In recent years, the State's voter registration applications (including the one used at DMV and public assistance agencies in Augusta County) have included a special section soliciting persons to serve as poll officials. These applications are publicly available at the Registrar's office, County offices, and the Commissioner of Revenue and Treasurer's offices. Not a single eligible Augusta County resident who has expressed an interest in becoming an election official has ever been denied the opportunity to do so. Although the number and percentage of minority persons in Augusta County is quite small, minority citizens have served as poll officials.

23. No person in Augusta County has been denied the right to vote on account of race, color, or membership in language group since at least the time that the Voting Rights Act was enacted in 1965.

24. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Augusta County as a prerequisite to either registering or voting for at least the preceding ten years.

25. Augusta County has never been the subject of any lawsuit in which it was alleged that a person (or persons) was being denied the right to vote on account of race, color, or membership in a language minority group.

26. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race, color, or membership in a language minority group.

27. Augusta County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in Augusta County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or the Craigsville town council.

28. Federal examiners have never been appointed or assigned to Augusta County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

29. There are no known incidents in Augusta County where any person exercising his or her right to vote has been intimidated or harassed at the polls (or while attempting to register to vote).

30. The allegations set forth in paragraphs 17 through 29, above, if established, entitle Augusta County to a declaratory judgment under Section 4 of the Voting Rights Act, 42 U.S.C. §1973b, exempting the County and all governmental units within the County from the special remedial provisions of the Voting Rights Act.

31. Pursuant to 42 U.S. C. §1973b, Augusta County has "publicize[d] the intended commencement …of [this] action in the media serving [the County] and in the appropriate United States post offices."   In August 2005, for example, the County published a Notice that it intended to commence this action and that it intended to file a proposed settlement of this action in the <u>The News Leader</u> and <u>The News Virginian</u>, two newspapers of general circulation in Augusta County.  The County also posted copies of Notices "in the appropriate United States

post offices" and at various public places throughout Augusta County. The County also published a legal Notice that it intended to commence and pursue the bailout process in the The News Leader and The News Virginian on February 23 and March 2, 2005. In addition, in late February and early March 2005, the County posted copies of that bailout legal Notice at approximately eight public locations throughout the County, including the County Courthouse and the Office of Voter Registration. The County also held a public hearing on the proposed bailout in March 2005, so that County residents could learn about the bailout process and the County's intentions to seek a bailout.

WHEREFORE, plaintiff Augusta County respectfully prays that this Court:

A. Convene a three-judge court, pursuant to 28 U.S.C. §2284 and 42 U.S.C. §1973b, to hear the claims raised in plaintiff's complaint;

B. Enter a declaratory judgment that Augusta County and all governmental units within the County are entitled to a bailout from the special remedial provisions of the Voting Rights Act; and

C. Grant such other relief as may be necessary and proper as the needs of justice may require.

**For Plaintiff Augusta County:**

STEVEN L. ROSENBERG
County Attorney
Augusta County, Virginia
18 Government Center Lane
P.O. Box 590
Verona, Virginia 24482-0590
(540) 245-5017


/s/ J. Gerald Hebert
J. GERALD HEBERT
Attorney at Law
J. Gerald Hebert, PC
5019 Waple Lane
Alexandria, Va. 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676