IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF COLUMBIA

AUGUSTA COUNTY, VIRGINIA, )
a political subdivision of the )
Commonwealth of Virginia, )
)
    Plaintiff, )
)
    v. )
)
ALBERTO R. GONZALES, )
Attorney General of the )   Civil Action No. 1:05-cv-01885-RWR
United States of America, )
BRADLEY J. SCHLOZMAN, )
Acting Assistant Attorney General, )
Civil Rights Division, United States )
Department of Justice, Washington, DC, )   Three-Judge Court Requested
)
    Defendants. )
_____)

## STIPULATION OF FACTS

This action was initiated by Augusta County, a political subdivision of the Commonwealth of Virginia (hereafter "the County"). The County seeks a declaratory judgment pursuant to Section 4(a) of the Voting Rights Act of 1965, as amended, 42 U.S.C. §1973b.

The parties have jointly moved this three-judge court for entry of a Consent Judgment and Decree to resolve this action. In support of that motion, the parties have entered into the following stipulation of facts. The facts in this stipulation may be received into evidence in lieu of further proof or testimony.

It is hereby stipulated, by and between the respective parties, that:

1. Plaintiff Augusta County is a political subdivision of the Commonwealth of Virginia and a political subdivision of a state within the meaning of Section 4(a) of the Voting Rights Act, 42 U.S.C. §1973b(a)(1). Augusta County, Virginia is located in the Shenandoah Valley,

approximately 150 miles from Washington, DC. The County covers 967 square miles, more than half of the size of Rhode Island. It is the second largest county (in land area) in Virginia.

2. Located within Augusta County are the independent cities of Staunton and Waynesboro. Augusta County residents are ineligible to vote in the municipal elections of Staunton and Waynesboro, and residents of those two independent cities are ineligible to vote in County elections.

3. In addition to the County itself, there are two elected governmental units that exist completely in Augusta County within the meaning of 42 U.S.C. §1973b(a)(1). One of these is the town government in Craigsville. Craigsville is governed by a six-member town council. Elections for the town council are conducted at-large, and a plurality win system is in effect. Elections are held every two years and terms of office for town council members are staggered. Craigsville residents are eligible to vote in both town elections and in county elections. The other governmental unit operating completely within Augusta County is the Augusta County School Board ("School Board"). Since 1995, the School Board has been an elected body, with members elected from the same seven districts as the County Board of Supervisors.

4. The Town of Grottoes straddles the border of both Augusta and Rockingham counties. The portion of the Town of Grottoes that lies within Rockingham County is approximately 1.3 square miles, and the portion of the town in Augusta County is less than 0.1 square miles. According to the 2000 census, the total population of Grottoes is 2,114, with only 4 persons living in that part of Grottoes that lies within Augusta County. Rockingham County has previously obtained a bailout from coverage under the special provisions of the Voting Rights Act, as amended, 42 U.S.C. §1973b. Rockingham County Va. v. John D. Ashcroft, CA NO. 1:02CV00391 (ESH) (D.D.C. 2002).

2

5. Augusta County is a covered jurisdiction subject to the special provisions of the Voting Rights Act, including Section 5 of the Act. 42 U.S.C. §1973c. Under Section 5, the County is required to obtain preclearance from either this Court or from the Attorney General for any change in voting standards, practices and procedures since the Act's November 1, 1964 coverage date for Virginia.

6. Augusta County was designated as a jurisdiction subject to the special provisions of the Voting Rights Act on the basis of the determinations made by the Attorney General that Virginia maintained a "test or device" as defined by Section 4(b) of the Act on November 1, 1964, and by the Director of the Census that fewer than 50 percent of the persons of voting age then residing in the state voted in the 1964 presidential election. 42 U.S.C. §1973b(b). The "test or device" triggering preclearance coverage under Section 5 was an article of the Virginia Constitution providing for a literacy test as a prerequisite for citizens to become electors. Va. Const. Art. II, Sec. 20 (1902). The literacy test was repealed by the Virginia Constitution of 1972.

7. The Augusta County Board of Supervisors is the governing body that formulates policies for the administration of government in Augusta County. It is comprised of seven members elected from single-member districts to serve four-year terms, which run concurrently. The County Board of Supervisors appoints a County Administrator to serve as the County's chief administrative officer.

8. According to the 2000 census, Augusta County, Virginia has a total population of 65,615. Of this number, 2360 persons (or 3.6%) are black and 620 (or 0.9%) are Hispanic. The voting age population of the County, according to the 2000 census, is 50,048. Of this number, 1966 (3.9%) are black and 407 (0.8%) are Hispanic. The Town of Craigsville, according to the

3

2000 census, has a total population of 979. Of this number, 17 (1.7%) are black and 4 (0.4%) are Hispanic.

9. Like other jurisdictions in the Commonwealth of Virginia, the County does not collect or maintain voter registration data by race. Current data show, however, that a significant proportion of the County's voting age population is registered to vote. As of July 2005, there are 38,627 registered voters in Augusta County.

10. The number of registered voters in the County has risen over the last couple of decades. In 1984, for example, there were only 22,899 registered voters in the County. By 1994, the number of registered voters had grown to 25,732. The number of registered voters in the County has grown even more dramatically over the last decade. From 1995 to 2005, the total number of registered voters in the County grew by 46%, from 26,468 in 1995 to 38,627 in 2005.

11. Voter turnout in elections within Augusta County varies according to the offices up for election. In the last three Presidential elections in 1996, 2000, and 2004, for example, 78.8%, 74.5% and 77.1% of the County's registered voters turned out to vote, respectively. In the General Elections for Governor held in November 1997 and 2001, 54.9% and 51.5% of the County's registered voters turned out to vote, respectively. Voter turnout (the percentage of those registered voters who cast ballots) for the Augusta County Board of Supervisors and School Board elections in the last two election cycles (1999 and 2003) was 28.1% and 36.1%, respectively.

12. There are presently a total of 25 polling locations (and an additional central absentee voting location) located conveniently to voters across the County. All polling places in the County are accessible to voters with physical disabilities.

13. No minority candidates have ever sought a position on the County board of supervisors. Nor have any minority candidates run for the County school board. The percentage of the minority populations in the two independent cities of Staunton and Waynesboro are significantly greater than Augusta County's minority populations.

14. Since 1980, Augusta County has made approximately 55 preclearance submissions to the United States Department of Justice pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. §1973c. Of these 55 submissions, 51 were made for the County, 2 were made for the Augusta County School Board, and 2 others were made for the Town of Craigsville.

15. Within the ten years preceding the filing of this action, Augusta County has enforced three voting changes prior to Section 5 preclearance. Two of these voting changes involved the temporary relocation of one polling place within the Fort Defiance area of the County, and the other change was an adjustment of the boundary line between the Town of Craigsville and Augusta County. These three voting changes have been precleared.

16. The Attorney General has not interposed a Section 5 objection to any change affecting voting in Augusta County within the past ten years. All voting changes submitted by the County under Section 5 have been precleared by the Attorney General. Augusta County has also never sought Section 5 judicial preclearance from this Court. The County has no pending Section 5 submissions before the Attorney General.

17. Voter registration opportunities in the County are readily and equally available to all citizens. The voter registration office for the County is located at the county government center in Verona, a central and convenient location for County residents. The voter registration office is open from 8 a.m. to 1 p.m. and from 2 p.m. to 5 p.m., Monday through Friday.

18. Voters in Augusta County may also register by mail, and voter registration applications are available at locations convenient to voters in the County, such as department of motor vehicles offices, military recruitment offices, public assistance agency offices, and the citizen information desk in the County Government Center lobby. Information about voter registration (including a voter registration application that may be downloaded) is also available on the County's website, at http://www.co.augusta.va.us.

19. The opportunity to become a registered voter in Augusta County is also available under the National Voter Registration Act (the "NVRA") at Department of Motor Vehicle ("DMV") offices and public assistance agencies in Augusta County. While in past years most voters became registered at the County's voter registration office, the implementation of the NVRA in Virginia over the last decade has changed the origin of the great majority of registration applications. Today, many of the County's new registrants register through the DMV and by mail, and the opportunities for persons to register to vote has been made more convenient and available as a result of implementation of the NVRA.

20. Augusta County also has a three-member Electoral Board, appointed pursuant to Virginia state law, and the Electoral Board presently nominates a roster of persons each February to work as poll workers for a one-year term. Recommendations of persons to be appointed as poll workers originate with the chairs of the local Democratic and Republican parties. No person recommended by a political party chair to serve as a poll official has been rejected by the Electoral Board for at least the preceding ten years.

21. Augusta County currently has 196 poll workers, at least ten of whom are black. The percentage of black poll workers (5.1%) exceeds the percentage of Augusta County's black voting age population (3.9%).

22. No person in Augusta County has been denied the right to vote on account of race, color, or membership in language group for at least the preceding ten years.

23. No "test or device" as defined in the Voting Rights Act (42 U.S.C. §1973b(c)) has been used in Augusta County as a prerequisite to either registering or voting for at least the preceding ten years.

24. No voting practices or procedures have been abandoned by the County or challenged on the grounds that such practices or procedures would have either the purpose or the effect of denying the right to vote on account of race or color. No court of the United States has issued a final judgment during the last ten years prior to the commencement of this action that the right to vote has been denied or abridged on account of race or color in Augusta County, and no consent decree, settlement, or agreement has been entered into resulting in any abandonment of a voting practice challenged on such grounds during that time. No such claims presently are pending or were pending at the time this action was filed.

25. Augusta County has not employed any voting procedures or methods of election that inhibit or dilute equal access to the electoral process by minority voters in the County. Minority voters in Augusta County are not being denied an equal opportunity to elect candidates of their choice to the County Board of Supervisors, to the County School Board, or the Craigsville town council.

26. Federal examiners have never been appointed or assigned to Augusta County under Section 3 of the Voting Rights Act, 42 U.S.C. §1973a.

27. Because there is no evidence that there has been any intimidation and harassment of persons exercising rights protected under the Voting Rights Act in Augusta County within the

last ten years, neither the County nor any of its governmental units have had any occasion to engage in constructive efforts to eliminate such activity.

28. Pursuant to 42 U.S.C. §1973b, Augusta County has publicized its intention to pursue a bailout. The County published a legal Notice that it intended to commence and pursue the bailout process and a notice of the public hearing in The News Leader and The News Virginian on February 23 and March 2, 2005, two newspapers of general circulation in Augusta County. In addition, the County posted copies of the bailout Notice at approximately eight public locations throughout the County, including the County Courthouse and the Office of Voter Registration. The County also held a public hearing on the proposed bailout in March 2005. In August 2005, the County also published a Notice that it intended to commence this action and that it intended to file a proposed settlement of this action in The News Leader and The News Virginian, two newspapers of general circulation in Augusta County. The County also posted copies of this Notice "in the appropriate United States post offices" and at various public places throughout Augusta County.

29. The United States has determined that it is appropriate to consent to a declaratory judgment in this action, pursuant to Section 4(a)(9) of the Voting Rights Act, notwithstanding the enforcement of certain minor voting changes prior to Section 5 preclearance. This consent is premised upon an understanding that Congress intended Section 4(a)(9) to permit bailout in those cases where the Attorney General is satisfied that the statutory objectives of encouraging Section 5 compliance, and preventing the use of racially discriminatory voting practices, would not be compromised by such consent.

30. The United States' consent in this action is based upon its own factual investigation and consideration of all of the circumstances in this case, including the views of minority citizens

8

in the County, the affirmative steps taken by the County to increase voter participation, and the absence of evidence of racial discrimination in the electoral process within the County.

31. The United States' consent also is based upon the fact that the voting changes enforced without Section 5 preclearance were minor in nature, were submitted promptly and precleared once brought to Plaintiff's attention, and the absence of any indication that the failure to submit those changes was intended to evade a Section 5 objection. In these circumstances, where the political subdivision seeking bailout otherwise meets the statutory requirements, the United States believes that bailout should not be denied.

Approved as to form and content:

**For the Plaintiff AUGUSTA COUNTY:**

STEVEN L. ROSENBERG
County Attorney
Augusta County, Virginia
18 Government Center Lane
P.O. Box 590
Verona, Virginia 24482-0590
(540) 245-5017

J. GERALD HEBERT
Attorney at Law
5019 Waple Lane
Alexandria, Va. 22304
(703) 567-5873 (O)
(703) 567-5876 (fax)
DC Bar No. 447676

**For the Defendants ALBERTO R. GONZALES and BRADLEY J. SCHLOZMAN:**

9

KENNETH L. WAINSTEIN
United States Attorney

JOHN TANNER
GILDA R. DANIELS
ABEL GOMEZ
Attorneys, Voting Section
Civil Rights Division
United States Department of Justice
Room 7254 - NWB
950 Pennsylvania Ave., N.W.
Washington, DC 20530
(202) 514-2386

10